```
            UNITED STATES DISTRICT COURT
          SOUTHERN DISTRICT OF MISSISSIPPI
                  EASTERN DIVISION
```

UNITED STATES OF AMERICA

VS.  CRIMINAL NO. 4:07CR5TSL-LRA
 CIVIL ACTION NO. 4:11CV53TSL

MICHAEL SHANE CAREY

MEMORANDUM OPINION AND ORDER

    Before the court is the sole remaining claim for habeas relief set forth in defendant Michael Shane Carey's motion for relief pursuant to 28 U.S.C. § 2255.  Having considered the claim, the government's response and the record before the court, the court concludes, for the reasons that follow, that the claim is without merit.  It follows then that Carey's § 2255 motion will be dismissed with prejudice.

    By the court's April 22, 2014 memorandum opinion and order, the court dismissed the majority of the claims for habeas relief set forth in Carey's § 2255 motion, leaving for consideration only Carey's claim of ineffective assistance of counsel pertaining to the proposed witness Emily Shoemake.  As the court was unable to conclude on the record then before it that Carey was not entitled to relief as to this claim, the court directed that the parties expand the record to include defense counsel's affidavit in response to the accusations set forth against him in the motion and provided the parties an opportunity to present supplemental briefing in light of counsel's affidavit.  While the government

timely provided its supplemental response, Carey has not submitted a supplemental traverse and the time for doing so has now expired.[1]

On April 4, 2007, a grand jury returned a four-count indictment against Carey, each count charging him with aggravated sexual abuse of a minor in violation of 18 U.S.C. § 1153 and § 2241(c). Carey exercised his right to trial by jury which found him guilty on all counts on July 8, 2008. On October 7, 2008, the court sentenced Carey to four life terms of imprisonment. On December 17, 2009, the Fifth Circuit Court of Appeals affirmed the sentence and conviction. United States v. Carey, 589 F.3d 187 (5th Cir. 2009). The Supreme Court denied Carey's petition for writ of certiorari on March 22, 2010. Carey v. United States, 559 U.S. 1024, 130 S. Ct. 1930 (2010).

Thereafter, Carey filed his § 2255 motion, by which he broadly asserted in Ground One, that trial counsel was ineffective for failing to contact witnesses.[2] While the motion itself

---

[1] Carey purported to file a notice of interlocutory appeal of the court's April 22, 2014 memorandum opinion and order. On June 19, 2014, the court entered an order advising Carey that filing a notice of appeal of an unappealable order did not deprive this court of jurisdiction over his § 2255 motion and that the court intended to undertake consideration of the remaining claim according to the schedule set forth in the April 22, 2014 memorandum opinion and order.

[2] The court's April 22, 2014 opinion addresses the other claims of ineffective assistance alleged by Ground One of the

2

contained no factual support to elucidate this claim, his memorandum in support of the motion added the following:

> Furthering trial counsel's ineffectiveness was not calling and interviewing some very crucial defense witnesses. Here the petitioner gave trial Counsel the names of some very key and crucial defense witnesses, but he never contacted any of these witnesses. Trial counsel never bothered to use any of them. In U.S. v. Grey 878 F.2d 702 (3rd Cir. 1989) [sic]. Trial counsel's failure to hire an investigator to track down potential witnesses amounted to ineffective assistance of counsel. In the case of CODE V. MONTGOMERY, 799 F.2D 1481 (11th Cir. 1986)[,] Trial Counsel fail[ure] to subpenea [sic] any witnesses, failed to conduct a pre-trial investigation, interview witnesses and secure the witnesses amounted to ineffective assistance of Counsel [and] warranted a new trial. Counsel has an obligation to interview witnesses who are known to have knowledge of the crime with which the defendant is being charged, at least where there is reason to believe the testimony will be favorable to the defense. Miller v. United States, 479 A. 3d 862 (D.C. App. 1984). There were at least 9 crucial defense witnesses that would have equivocally shed 100% the flaws in the government's case if they were called and allowed to testify at the petitioner's trial. See Affidavits of:

While the brief recited that Carey had given trial counsel the names of 9 witnesses, the only putative evidentiary support offered for this proposition was the "declaration of affidavit of Ms. Emile Shoemake."[3] Per Shoemake's affidavit:

> (2) At the time of the Petitioner's Charges I was at the age of 11 years old.

---

motion.

   [3]   Shoemake's declaration was signed under penalty of perjury pursuant to 28 U.S.C. § 1746.

> (3) One day I arrived at the school and during the Breakfast meal I had the oppertunity [sic] to speak with the alleged victim DeAndra Jordan Concerning the Allegations she made against the Petitioner.
>
> (4) I directly asked her was she lying on my uncle, the petitioner, Which she informed me yes and I then inquired why ? and she said because he would allow me to go out at the place where she wanted to go. from that I stated oh and walked away.

As the government pointed out by its initial response to the motion, Shoemake's declaration failed to indicate whether the alleged admission by the victim occurred pre- or post-trial and whether she was willing to testify at trial about the conversation.

As the court was unable to conclude on the record that then existed that Carey was not entitled to relief as to this claim, it directed Carey to provide an affidavit detailing his conversations with trial counsel regarding calling his niece as a witness.

Carey's affidavit provided as follows:

> 2) That my niece, Emily Shoemake informed me and other family members, that she had been speaking with the alleged victim on several occassions [sic] while at school. She inquired of her why did she accuse my Uncle of what she did, and she stated that she was mad at him because he punished her, and would not let her go outside and hang with her friends.
>
> 3) That I informed and requested that my Trial attorney, Mr. Omodare B. Jupiter of what my niece said and for him to interview her and subpoena her as a witness to prove that the alleged victim is lying. . . . [4]

---

[4] By paragraph 4 of the affidavit, Carey recited that he also asked Jupiter to contact his former employer, Jamie Williams.

4

> 5) That my Trial Attorney, Mr. Jupiter never contacted
> either one of these witnesses, nor issued a subpoena for
> them to come testify on my behalf, and my niece even
> wrote a letter, which I submitted with my § 2255
> petition.

In light of Carey's representation that he informed Jupiter of Shoemake's potential testimony prior to trial and that Jupiter never contacted her, by its April 22, 2014 memorandum opinion and order, the court directed Jupiter to provide an affidavit regarding Carey's allegations regarding Shoemake and requested additional briefing on the claim in light of the affidavit. By his affidavit, Jupiter disputes Carey's allegation that he did not investigate calling Shoemake as a witness. He instead states that in two instances, once 5 months before trial and once on the first day of the trial, an interview with Shoemake was attempted, but that neither he nor his office's investigator was able to determine whether she had any useful information because of her fragile emotional state. According to Jupiter, in both instances, he communicated not only the results of the interview to Carey, but also his impression that even were Shoemaker ever able to communicate any useful information, there remained a substantial risk that, if she was placed on the stand, jurors would believe that the child was being forced to take the stand to provide false

---

Carey's belated attempt to amend his motion to add a claim of ineffective assistance of counsel based on Jupiter's failure to contact Williams is denied.

testimony in support of her uncle. Per Jupiter's affidavit, Carey raised no objection to the decision.[5]

---

[5]Jupiter's affidavit provides as follows:
    Mr. Carey was detained at the Madison County Jail. I met him several times. During one of our meetings, he mentioned that he had a niece, E.S., who went to school with the 11 year old complainant in this case. He said that his niece told his family members that the complainant was saying that she lied about Mr. Carey and had him locked up.
    Investigator Greg King traveled to the Choctaw Reservation on March 5, 2008 to interview several witnesses in this case. He met with E.S. and her mother at the residence of Mr. Carey's father. Mr. King reported the following information to me in writing:

> Upon arriving at Mr. Carey's residence, I met [E.S.] and her mother, Tracy S. The interview with E.S. was conducted at the kitchen table, with the presence of her mother. Initially, I identified myself to E.S. and explained the purpose of me wanting to talk to her. I then asked E.S. whether or not she had the opportunity to talk to [the complainant] about her uncle, Michael Carey? E.S. responded by softly responding with answer, yes. At this time, Mrs. Shoemaker informed me that through the other children at school, E.S. learned [complainant] had been talking to other children [unknown individuals] at school about how she lied on Michael [Carey]. I then asked [E.S.] whether or not she had talked to [the complainant]. Upon responding to my question, I noticed water started to form up in her eyes. E.S. then softly muttered that [the complainant] said something about she lied on Michael. I then attempted to get E.S. to clearly verbalize what was stated by [the complainant]. Upon revisiting the subject, E.S. started crying somewhat loudly and was unable to provide any additional information or clarity to my question. Due to E.S.'s emotional response[,] I did not attempt to further my interview with her. E.S.'s mother then directed E.S. to leave the table.

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Gaudet, 81 F.3d 585, 589 (5th Cir. 1996) (citations and

---

> I reported the results of the interview to Mr. Carey.  I explained to him that his niece had not told us anything that would be helpful in the case and, that even if she did, we would be taking a high risk by calling her as our witness.  I did not want to have her take the stand and start crying through her testimony.
>
> On the first day of trial, I saw that Mr. Carey's mother had E.S. with her.  Mr. Carey told me, once again, that E.S. would be able to tell me now how the complainant admitted at school that she lied about these charges.  I went to the witness room with Mrs. Carey and her granddaughter.  E.S. appeared somewhat withdrawn.  I introduced myself and tried to talk to her to make her comfortable with me.  She was very quiet and did not make eye contact.  I asked her if she knew the complainant and she said that she did.  I started asking her about their school and other background information.  She gave me one word answers.  I then asked her about the complainant and what she was saying about Mr. Carey.  She started crying.  She muttered some things that I could not understand.  I tried to get her to calm down, but she continued to cry.  I stopped the interview as it appeared that she was not going to be able to provide any useful testimony; and if she ever did, there was a substantial risk that jurors would believe that the child was being forced to take the stand and provide false testimony for her father.  I told Mr. Carey, E.S.'s grandmother, that I would be available to interview E.S. again if she was ever able to speak to me about what she heard.  Mrs. Carey never broached the subject again with me.  I told Mr. Carey it would not be a good idea to call E.S. as a witness in the case and told him that she would not be able to tell me anything and that she just cried when I asked her questions.  Mr. Carey did not raise any objection to this decision.

internal quotation marks omitted).  Where a defendant failed to raise an error on his direct appeal, he may only collaterally attack his conviction on that ground upon a showing of "cause" for the omission and "actual prejudice" resulting from the asserted error.  See United States v. Kallestad, 236 F.3d 225, 227 (5th Cir. 2000).  A showing of ineffective assistance of counsel satisfies the cause and prejudice standard.  Id.

In order to prevail on a claim for ineffective assistance of counsel, a defendant must satisfy the two-prong test set out in Strickland v. Washington, 466 U.S. 668 (1984).  That is, he must demonstrate (1) that counsel's performance was deficient in that it fell below an objective standard of reasonable professional service; and (2) that this deficient performance prejudiced the defense such that there is a reasonable probability that the outcome of the trial has been undermined and the result would have been different.  Strickland, 466 U.S. at 687, 688.  A petitioner's failure to establish both prongs of the Strickland test warrants rejection of his claim.

"[C]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978).  The presentation of witness testimony is essentially strategy and, thus, within the trial

counsel's domain.  Alexander v. McCotter, 775 F.2d 595, 602 (5th Cir. 1985).  To demonstrate the requisite prejudice, the defendant "must show not only that this testimony would have been favorable, but also that the witness would have testified at trial."  United States v. Delgado, 22 F.3d 1093 (5th Cir. 1994) (citing Alexander, 775 F.2d at 602).  Here, even were the court to credit Carey's conclusory assertion that Jupiter failed to contact Shoemake[6] and to deem this failure to be a deficiency on Jupiter's part, the court agrees with the government that Carey has nevertheless failed to demonstrate the requisite prejudice from the alleged deficiency.  While Shoemake's declaration does set out a potentially exculpatory admission from the complainant, it contains no representation that Shoemake would have testified to the alleged admission at trial and thus does not provide a basis for relief.[7]  See Id.

---

[6] Carey provides no further factual support for this statement.  That is, he does not explain how he came to know or why he believes that Jupiter did not contact Shoemake.  Jupiter obviously disputes Carey's allegation that he failed to contact Shoemake as part of his pre-trial investigation.  For her part, Shoemake's affidavit is silent as to whether anyone from Carey's defense team contacted or otherwise interviewed her prior to trial.

[7] Although the government pointed out this deficiency in both its initial response to the motion in August 2011 and its more recently-filed supplemental response, Carey has failed to offer any additional proof as to this element of his claim.

Based on the foregoing, it is ordered that defendant's motion for relief pursuant to 28 U.S.C. § 2255 is denied.

It is further ordered that a certificate of appealability should not issue.  Defendant has failed to make a substantial showing that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether [this] court was correct in its procedural ruling."  Slack v. McDaniel, 529 U.S. 473, 484, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000).

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED this the 22nd day of July, 2014.

                                /s/Tom S. Lee
                                UNITED STATES DISTRICT JUDGE